Judge Marion F. Edwards, Pro Tempore
11 Plaintiffs/Appellants, Charles J. Coch-rane, Sr. and Madalyn M. Cochrane, appeal a declaratory judgment of the district court that found La. R.S. 33:9091.21, which created the Eastover Neighborhood Improvement and Security District, constitutional. For the following reasons, we hereby affirm.
PROCEDURAL HISTORY AND FACTS
Mr. and Mrs. Cochrane (“Plaintiffs”) own Lot 13, Square G, in the Eastover Subdivision in Orleans Parish. On October 24, 2013, Concerned Citizens of Eastover, LLC, filed a petition challenging the constitutionality of House Bill 323, Louisiana Act 24 and Proposed Revised Statute 33:9091.21. According to the Eastover Subdivision Newsletter, authored and published by the Eastover Property Owners Association (“EPOA”) Board of Directors, dated September 25, 2013, House Bill 323 was proposed for the following reasons, in pertinent part:
House Bill 323, which creates the East-over Neighborhood Improvement and Security District, will be on the November 16, 2013, general election ballot for resident approval... [t]his creates an opportunity that will facilitate the collection of association dues (assessment) from all property owners. This bill does not increase your assessments, but rather will allow for the annual billing of assessments via the City of New | {.Orleans property tax billing system and would be effective for 2014.
The EPOA [Eastover Property Owners Association] has approximately three hundred (300) properties. Two hundred (200) owners are seriously committed to our community and are paying them assessments. The remaining one hundred (100) properties are owned by the developer, banks, speculators and homeowners who actually reside in Eastover’s Subdivision. Owners who are not paying their assessments reduce our EPOA’s budget by more than $125,000 per year. This places a financial burden on our Association’s ability to meet our financial obligations and does not provide adequate funds for improvements.
When we further analyze the one hundred (100) Eastover property owners who are not paying assessments, approximately 45 of them live in Eastover and apparently refuse to pay their assessments. House Bill 323 will require all property owners to pay their EPOA assessments when they pay their property taxes.
Prior to being submitted to the voters of Eastover Subdivision (Precinct 44), La. R.S. 33:9091.21 became effective on June 12, 2013, as a result of the filing of House Bill 323 in the 2013 Regular Session of the Louisiana Legislature.[1]
La. R.S. 33:9091.21 Eastover Neighborhood Improvement and Security District provides, as follows:
A. Creation. There is hereby created within the parish of Orleans, as more specifically provided in Subsection B of this Section, a body politic and corporate which shall be known as the Eastover Neighborhood Improvement and Security District, referred to in this Section as the “district”. The district shall be a *159 political subdivision of the state as defined in the Constitution of Louisiana.
B. Boundaries. (1) The district shall be comprised of all property located in Eastover Subdivision within the lafollowing boundaries: the northern boundary is the northern boundary of the Eastover Subdivision, the southern boundary is Dwyer Road, the eastern boundary is the I—10 Service Road, and the western boundary is the Jahncke Canal.
(2)The property located at 5690 East-over Drive shall not be included in the district as long as a sales and administration office is located on the property and the office is available to the board to conduct its business.
C. Purpose. The district is established for the primary object and purpose of promoting and encouraging the beautification, security, and overall betterment of the district.
D. Governance. (1) In order for the orderly development and effectuation of the services to be furnished by the district and to provide for the representation in the affairs of the district of those persons and interests immediately concerned with and affected by the purposes and development of the area included within the district, the affairs of the district shall be managed by the members of the Eastover Property Owner’s Association’s board of directors, referred to in this Section as the “board”.
(2) The minute books and archives of the district shall be maintained by the board’s secretary. The monies, funds, and accounts of the district shall be in the official custody of the board.
(3) The duties of the officers shall be fixed by bylaws adopted by the board. The board shall adopt such rules and regulations as it deems necessary or advisable for conducting its business affairs. It shall hold regular meetings as shall be provided in the bylaws and may hold special'meetings at such times and places within the district as may be prescribed in the bylaws.
(4) A majority of the members of the board shall constitute a quorum for the transaction of business. The board shall keep minutes of all meetings and shall make them available through the board’s secretary to residents of the district.
(5) The members of the board shall serve without compensation.
14E. Powers and duties. The district, acting through the board, shall have the following powers and duties:
(1) To receive and expend funds collected pursuant to Subsection F of this Section and in accordance with a budget adopted as provided by Subsection G of this Section.
(2) To enter into contracts with individuals or entities, private or public, for the provision of security patrols in the district.
(3) To purchase items and supplies which the board deems instrumental to achieving the purpose of the district.
(4) To perform or have performed any other function or activity necessary for the achievement of the purpose of. the district.
F. Parcel fee. The governing authority of the city of New Orleans is hereby authorized to impose and collect a parcel fee within the district subject to and in accordance with the provisions of this Subsection.
(1) (a) The amount of the fee shall be as requested by duly adopted resolution of the board. The fee shall be a flat fee per parcel of land, and the initial fee shall be sixteen hundred fifty-two dollars per year for each parcel.
*160 (b) If multiple adjacent parcels are combined for the purpose of housing a single family dwelling, the flat fee for the combined parcel shall be calculated to be one and four tenths times the single parcel fee for two adjacent parcels and one and six tenths times the single parcel fee for three or more adjacent parcels.
(2) (a) The fee shall be imposed on each parcel located within the district.
(b) For purposes of this Section, “parcel” means a lot, a subdivided portion of ground, an individual tract, or a “condominium parcel” as defined in R.S. 9:1121.103.
(c) The owner of each parcel shall be responsible for payment of the fee.
(3) (a) The fee shall be imposed only after the question of its imposition has been approved by a majority of the | ¿registered voters of the district voting on the proposition at an election held for that purpose in accordance with the Louisiana Election Code.
(b) The amount of the fee may be increased or decreased by duly adopted resolution of the board if approved by a majority of the registered voters of the district voting on the proposition at an election as provided in Subparagraph (a) of this Paragraph.
(4) The fee shall be collected at the same time and in the same manner as ad valorem taxes on property subject to taxation by the city are collected.
(5) Any parcel fee which is unpaid shall be added to the tax rolls of the city and shall be enforced with the same authority and subject to the same penalties and procedures as unpaid ad valorem taxes.
(6) (a) The proceeds of the fee shall be used solely and exclusively for the purpose and benefit of the district; however, the city may retain one percent of the amount collected as a collection fee.
(b) The city of New Orleans shall remit to the district all amounts collected not more than sixty days after collection.
G. Budget. (1) The board shall adopt an annual budget in accordance with the Louisiana Local Government Budget Act, R.S. 39:1301 et seq.
(2) The district shall be subject to audit by the legislative auditor pursuant to R.S. 24:513.
H. Miscellaneous provisions. (1) It is the purpose and intent of this Section that the additional law enforcement or security personnel and them services provided for through the fees authorized in this Section shall be supplemental to and not in lieu of personnel and services provided in the district by the New Orleans Police Department.
(2) If the district ceases to exist, all funds of the district shall be transmitted by the board to the city of New Orleans, and such funds, together with any other funds collected by the city of New Orleans pursuant to this Section, shall be maintained in a separate account by the city and shall be used only to promote, encourage, and | r,enhance the security, beautification, and overall betterment of the area included in the district. Acts 2013, No. 244, § 1, eff. June 12, 2013.
Thereafter, on July 25, 2013, the City of New Orleans introduced, and passed by a vote of 6-0, Resolution No. R-13-263, calling a special election in the Eastover Neighborhood Improvement and Security District for Saturday, November 16, 2013. According to Attorney General, Jeffrey Landry, the Resolution also provided, as follows:
The Resolution reiterated the provisions set forth in Act 244, and further noted that the Board of Directors of the East-over Property Owners Association met on July 23, 2013 and adopted a resolu *161 tion requiring the City Council of New Orleans to levy (and collect) in perpetuity an annual flat $1,652 fee per parcel commencing on January 1, 2014, subject to the question of the imposition of such fee being approved by a majority of the registered voters of the District voting on the question at the November 16, 2013 general election.
On November 16, 2013, sixty (60%) percent of the registered voters in the Eastover Subdivision voted in favor of a proposition which established the annual Eastover property owners assessment as one lump sum payment of $1,652.00 instead of four (4) quarterly installment payments totaling approximately $1,652.00. Additionally, the proposition required the annual payment to be made to the City of New Orleans in conjunction with the annual property tax payment.[2]
On August 4, 2014, Concerned Citizens filed an amended petition against Eastover Neighborhood Improvement and Security District and EPOA seeking a declaratory judgment regarding the constitutionality of La. R.S. 33:9091.21. On |7August 5, 2014, Plaintiffs were first named as party plaintiffs in an amended petition. Thereafter, on June 8, 2015, Plaintiffs filed a motion for declaratory judgment, and/or summary judgment, arguing that La. R.S. 33:9091.21 violates the Contracts Clause of the Constitution of the United States, and the State of Louisiana and is unconstitutional. After a hearing on March 2, 2016, the district court denied Plaintiffs’ motion for summary judgment and found La. R.S. 33:9091.21 to be constitutional. Plaintiffs now appeal this final judgment.
DISCUSSION
The sole issue before this Court is whether the district court erred in finding that La. R.S. 33:9091.21 does not violate the Contracts Clause of the Constitution of the United States of America and the State of Louisiana.
Article I, Section 10[1] of the United States Constitution, provides:
No State shall.. .pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts...
Article I, Section 23 of the Louisiana Constitution of 1974 provides:
No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted.
The Louisiana Supreme Court has described these provisions as “virtually identical” and “substantially equivalent.” Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 291 (La.1986). Although the language of each clause is facially absolute, its prohibition must be accommodated to the inherent police power of the state to safeguard the vital interests of its people. Energy Reserves Group, Inc. v. Kansas Power and Light Company, 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983); Board of Commissioners, 496 So.2d at 292. As such, the United States Supreme Court stated in Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 241, 98 S.Ct. 2716, 2721, 57 L.Ed.2d 727 (1978), quoting Manigault v. Springs, 199 U.S. 473, 480, 26 S.Ct. 127, 130, 50 L.Ed. 274 (1905):
It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of *162 the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which, in its various ramifications, is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.
The question of whether La. R.S. 33:9091.21 is constitutional is a legal question which will be reviewed de novo. Louisiana Municipal Association, et al. v. State of Louisiana and the Firefighters’ Retirement System, 04-0227 p. 45 (La. 1/19/05), 893 So.2d 809, 842. This court has repeatedly held that statutes and legislative acts are generally presumed to be constitutional and the party challenging the validity of the statute has the burden of proving it is unconstitutional. Id. at p. 45, 893 So.2d at 843. Thus, in this declaratory judgment action, the Plaintiffs bear the burden of proving the unconstitutionality of the legislative acts at issue.
The Louisiana Supreme Court, in Board of Commissioners, 496 So.2d at 292-293, set forth the appropriate contract clause analysis as enunciated by the United States Supreme Court in Energy Reserves Group, Inc. Board ofCommission-ers. Under this four-step analysis, the court must determine whether the state law has, in fact, impaired a contractual relationship. The party complaining of unconstitutionality has the burden of demonstrating, first, that the statute alters contractual rights or obligations. Second, if an impairment is foundJs the court must determine whether the impairment is of constitutional dimension. Third, if the state regulation constitutes a substantial impairment, the court must determine whether a significant and legitimate public purpose justifies the regulation. Fourth, if a significant and legitimate public purpose exists, the court must determine whether the adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation’s adoption. See also Segura v. Frank, 93-1271 (La. 1/14/94), 630 So.2d 714, 729.
Plaintiffs argue that La. R.S. 33:9091.21 substantially impairs the contractual rights of all lot owners under the Articles of Incorporation and Act of Restrictions of Eastover Subdivision by replacing'the way that the homeowners association assesses, collects and disburses charges related to the operation, maintenance and administration of the subdivision. Further, Plaintiffs argue that there is no significant and legitimate public purpose justifying the substantial and severe impairment of La. R.S. 33:9091.21 to the vested contractual rights of lot owners under the community documents. Thus, Plaintiffs argue that the district court erred in failing to conclude that the statute violates the federal and state constitutional prohibitions against impairment of contractual obligations, as it goes too far and is neither reasonable nor appropriate to its goal of expanding the power of the board of directors of the nonprofit association using the police power of the City of New Orleans to collect association dues.
In response, the Eastover Neighborhood Improvement and Security District responds that Plaintiffs have failed to establish that La. R.S. 33:9091.21 impairs the contractual obligations between the homeowners and the EPOA. Specifically, it argues that the rights of the Eastover property owners prior to, and subsequent to the ' i mvoter approval of the Eastover Neighborhood Improvement and Security *163 District, are virtually identical because the amount of the assessment is the same ($1,652.00), with the only change being that the property owners now pay an annual lump sum payment to be paid concurrently with the payment of property tax to the City of New Orleans instead of having four quarterly payments to the EPOA. Thus, Eastover Neighborhood Improvement and Security District argues that the Plaintiffs failed to prove that La. R.S. 38:9091.21 creates a substantial impairment to the parties’ contractual obligations. We agree.
In finding La. R.S. 33:9091.21 constitutional, the district judge provided the following oral reasons for her ruling, which we find worth noting, as follows:
I just want to make sure. So I reviewed the original covenants as well as the Articles of Incorporation of the homeowners association [sic] I guess of the board of directors as well as what the original owners contemplated and I find that the creation of the Security District does not violate the constitution, in particular the Contract Clause of the constitution insofar as the original covenants span approximately 30 some odd pages. The Board of Directors Articles of Incorporation or the Articles of Incorporation of the Eastover Property Owners Association span[s] approximately maybe about 10 pages. In that[,] they talk about how property should be maintained, how the—from the building of the homes to the placement of garages to all sorts of things that this creation of the Security District do [sic] not impinge upon. It also talks about the fact that they can levy fees. They can levy fines. They can levy whatever it is that they believe necessary as long as I think it was two-thirds of the membership agree.
Well, that’s what happened here. You had a vote by the board to have this legislation go into effect and then you had a vote—because it’s a constitutional provision[,] you had a vote by the homeowners. It was presented on a ballot to each.of the homeowners. .
I fully adopt the Attorney General’s argument as stated in their brief as to why this is constitutional. The Inhomeowners had an opportunity to vote on this issue. They voted overwhelmingly. They didn’t vote unanimously. It was 60/40. They did vote overwhelmingly in support of this measure. I did not see anywhere in—and unless I just overlooked it, anywhere in the covenants, and if I overlooked it I apologize, where it says under no circumstances can we ever enact any legislation to collect fees or fines or whatever for these assessments for these properties. It does not restrict this contract that the—when a homeowner buys property in Eastover, it doesn’t say at some point in the future we are going to restrict how monies are going to be collected for homeowners dues. Nowhere in here does it say that. I looked for it, I didn’t find it. Likewise, I didn’t find [sic] we’re never going to be anything other than what we are. 50 years these covenants are going to remain in place, covenants to make sure that these properties look a certain way, perform a certain way, the common areas are a certain way, but it doesn’t say specifically but in no way will the board never [sic] have authority to levy fines or fees or enact anything that they want in order to make sure that these properties are maintained a certain way by collecting the homeowners association dues, and so I disagree, Mr. Klein, [Plaintiffs’ attorney] respectfully with the arguments that you made before me this morning[,] because I just don’t think that the contracts before me a/k/a the covenants and the articles of incorporation of the homeowners association espouse those points. It’s lacking in that sense.
*164 I do believe it meets the—if I have to go that far [sic] it meets the Supreme Court case" of Energy. I don’t think that it is a substantial impairment on any rights of this contract. It’s one small provision. As I’ve stated these covenants are 30 odd pages[,] very detailed pages. The Security District does not usurp any of those covenants. It only expands the ability of the board to efficiently collect homeowners association dues. It is an efficiency provision as far as I’m concerned and I do find that it is constitutional[,] and so far that reasonf,] I am declaring that Louisiana Revised Statute 33:9091.2[1] is constitutional.
After reviewing both the EPOA’s Act of Restrictions and its Articles of Incorporation, we find that the contractual relationship between the EPOA, and the members of the EPOA, regarding the assessment and collection of I ^dues/assessments, have always involved a combination of authority exercised by members at large and the actions of the EPOA Board of Directors. According to the documents in the record, the owner, and developer, of the Eastover Subdivision Lake Forest, Inc. set the initial amount of the assessment a record title owner was obligated to pay upon purchasing property in the subdivision. Thereafter, “[ejvery person or entity who is a record title owner of any of the following described lots in Eastover Subdivision... shall ipso facto be a member of the Association. Each member shall be entitled to the rights and privileges and subject to the obligations as are more fully set out in... the Articles of Incorporation.” See Article Four, Property Owners’ Association. According to Article IV of the Eastover Articles of Incorporation regarding the members’ voting rights provides as follows:
A member shall be entitled to one (1) vote for each such lot within “The Properties”, of which he is the record title owner. When more than one (1) person or entity owns or has an interest in any said lot within “The Properties”, all such person shall be members, and the vote for such lot shall be exercised as they among themselves determine, but in no event shall more than one (1) vote be cast with respect to such lot. In the event of any future annexations in conformity with Article VI herein, the owners of lots therein will also be members of this corporation.
Further, the Article of Incorporation grants power to the general membership and the Board of Directors to change the amount of the Eastover Assessment. Article VII of the Articles of Incorporation provides in pertinent part:
The amount of regular dues and/or assessments are hereby initially fixed at $180.00 per quarter lot but may be subsequently changed by a two-thirds (2/3) vote of the total membership, except that the Board of Directors of this corporation shall have the authority from time-to-time to change the then current regular dues and/or assessments by ten (10%) percent in any given twelve (12) month period.
| ^Additionally, this Court, in Eastover Property Owner’s Ass’n, Inc. v. Cochrane, 02-1502 (La.App. 4 Cir. 5/21/03), 848 So.2d 710, previously recognized the authority of the EPOA Board of Director’s right to adjust the amount of the EPOA assessment. Specifically, this Court stated, in pertinent part:
The amount of dues and/or assessments was originally set at $180.00 per quarter but has since been increased pursuant to a provision of the act which gives the board of directors the authority to change the regular dues or assessments by ten percent in any given twelve month period. This has happened on five occasions since 1987. In August of 1995, the board of directors passed a resolu *165 tion that imposed a ten percent late fee on the fifteenth day of the second month of a quarter for the late payment of dues and/or assessments. Additionally, the members of the EPOA approved a one time special assessment of $150.00 in 1995.
Id. at pp. 1-2, 848 So.2d at 711.
Again, it is worth reiterating that sixty percent of the residents in the Eastover Subdivision voted in favor of La. R.S. 33:9091.21, which required each property owner to make an annual payment of $1,652.00 per parcel of land to the City of New Orleans concurrent with the payment of the annual ad valorem tax payment. After reviewing the EPOA’s Act of Restrictions, as well as its Articles of Incorporation, we do not find that a one lump sum payable to the City of New Orleans in conjunction with the homeowners’ annual property tax payment, instead of quarterly payments of the same amount to the EPOA Board of Directors, is an impairment of constitutional dimensions. Accordingly, we agree with the trial court that Plaintiffs failed to support the allegation that La. R.S. 33:9091.21 operated as a substantial impairment to the contractual relationships between the homeowners and the EPOA.
|uEven assuming that Plaintiffs proved a substantial impairment of a contractual relationship, we find that the EPOA had a significant and legitimate public purpose in promoting and encouraging the beautification, security, and overall betterment of its district that justified enacting La. R.S. 33:9091.21.
For these reasons, we affirm the judgment of the district court, which found La. R.S. 33:9091.21 to be constitutional.
AFFIRMED

. The bill that initiated the Eastover Security District Statute, House Bill 323, was introduced by Representative Austin Badon, and received the following votes: the Committee on Municipal, Parochial and Cultural Affairs passed the bill by a vote of 13-0; the House of Representatives passed the bill by a vote of 91-1; the bill was passed out of the Senate Committee on Local and Municipal Affairs; the Louisiana Senate passed the bill 39-0. House Bill 323 became Act 244 when signed by the Governor.

. Under the proposition, the City of New Orleans retains 1% of the amount collected as a collection fee and requires the City to remit to the district all amounts collected not more than 60 days after collection. See La. R.S. 33:9091.21F(6)(a), supra.